197 N.J. Super. 604 (1984)
485 A.2d 1063
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
GERALDINE JONES, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 1984.
Decided December 17, 1984.
*605 Before Judges KING, DEIGHAN and BILDER.
Marc J. Friedman, Assistant Prosecutor, argued the cause for appellant (George L. Schneider, Essex County Prosecutor, attorney).
Robert L. Brown argued the cause for respondent.
The opinion of the court was delivered by BILDER, J.A.D.
On May 14, 1984 defendant Geraldine Jones entered a plea of guilty to second degree theft by deception (N.J.S.A. 2C:20-4) pursuant to a plea agreement wherein the State agreed to recommend that any custodial term not exceed five years and that defendant be required to pay full restitution of the moneys *606 taken within the Statute of Limitations. On May 31, 1984 the sentencing judge determined that defendant should be sentenced to a term appropriate to a third degree crime, N.J.S.A. 2C:44-1(f)(2), and sentenced her to five years probation with the special conditions that she serve 364 days in the Essex County Jail and pay $150 per month as restitution during the period of probation. The State appeals contending that the application of N.J.S.A. 2C:44-1(f)(2) was not justified by the facts and that the county jail sentence did not comply with the statutory mandate for imprisonment required by N.J.S.A. 2C:44-1(d).
Defendant had been the accounts payable manager of Canadian Fur Trapper Corporation (Canadian). In that position she had authority to direct the payment of invoices received by the company. By resubmitting invoices that had already been paid, she was able to obtain Canadian checks which she diverted into her own account by false endorsements. Between July 10, 1974 and July 29, 1982 she cashed hundreds of checks totaling $720,600.22. The proceeds were apparently used to support obsessive gambling.
Defendant is a 42-year old married woman whose past life, apart from this offense and the compulsive gambling with which it was intertwined, was unblemished. For 22 years after graduating high school, she continuously worked for Canadian and attained a position of responsibility. After that employment was terminated, she found other employment of some responsibility. She has a stable and successful marriage. In sentencing the defendant, the judge noted the applicability of a number of mitigating factors. Defendant's conduct neither caused nor threatened serious harm; her employer's conduct facilitated the commission of the offense; she had previously led a law-abiding life free of prior criminal activity; her conduct was the result of circumstances unlikely to recur; it is unlikely she will commit another offense, and to some extent imprisonment would entail excessive hardship. N.J.S.A. 2C:44-1(b)(2), (5), (7), (8), (9) and (11).
*607 Against this list of mitigating factors, the trial judge noted the applicability of the following aggravating factors: this was a serious offense in which defendant caused a substantial financial loss to her employer; she took advantage of a position of trust, and there was a need for deterrence. N.J.S.A. 2C:44-1(a)(1), (4) and (9).
Comparing these factors, the judge concluded the mitigating factors outweighed the aggravating factors and downgraded the crime to a third degree offense for sentencing purposes. N.J.S.A. 2C:44-1(f)(2). The State contends the judge reached this result by improperly weighing the factors with a focus on the defendant and rehabilitation rather than on the seriousness of the offense. See State v. Roth, 95 N.J. 334, 377 (1984). It contends this action amounted to a clear abuse of discretion requiring reversal. Id., 95 N.J. at 363. We agree. Not only did the judge weigh the factors in a numerical way eschewed by Roth, id., 95 N.J. at 368 but also he failed to give sufficient emphasis to the offense itself and never dealt with the important question of whether the interests of justice demanded such a downgrade. Additionally, he treated Canadian's trusting conduct as facilitating the commission of the crime. Such a conclusion finds no support in law or reason. A failure to audit an employee is not conduct which induces or facilitates an embezzlement within the meaning of N.J.S.A. 2C:44-1(b)(5).
Defendant used her position of trust to steal in excess of $700,000 over eight years. The Legislature has classified the seriousness of this type of crime by the amount taken. This theft was a second degree offense because it exceeded $75,000. N.J.S.A. 2C:20-2(b)(1). By downgrading it for sentencing purposes, the trial judge treated it as a theft of $500 to $75,000. N.J.S.A. 2C:20-2(b)(2)(a). The legislative mandate should be followed in the absence of some compelling reason to the contrary. The trial judge's desire to rehabilitate the defendant is understandable but must give way to the requirement that *608 the sentence "reflect the Legislature's intention to focus on the degree of the crime." State v. Hodge, 95 N.J. 369, 377 (1984).
The State also contends the county jail sentence imposed by the trial judge does not satisfy the presumption of imprisonment ordained by N.J.S.A. 2C:44-1(d). The State would read the term "imprisonment" as used in that section to mean imprisonment for the term prescribed by the statute for the particular crime  here from five to ten years. The State further contends that once a judge determines that a sentence of imprisonment should be imposed, a state prison sentence is mandated by N.J.S.A. 2C:44-1(f)(1). This section provides in pertinent part:
When a court determines that a sentence of imprisonment be imposed, it shall sentence the defendant to a term of fifteen years for a crime of the first degree, to a term of seven years for a crime of the second degree, to a term of four years for a crime of the third degree and to a term of nine months for a crime of the fourth degree unless the preponderance or aggravating factors or proponderence of mitigating factors weighs in favor of higher or lower terms within the limits provided in N.J.S.A. 2C:43-6.
The State argues that this section is mandatory and must be literally applied, once triggered by the imprisonment determination. We disagree. This argument ignores the stated purpose of N.J.S.A. 2C:44-1(f)(1)  to create a presumptive period within the statutory limits provided for prison confinement. When the Legislature referred in N.J.S.A. 2C:44-1(f)(1) to a determination "that a sentence of imprisonment be imposed," it meant a prison term. This section relates solely to such incarceration. That this construction is correct becomes evident when the effect of the State's position on N.J.S.A. 2C:43-2(b)(2) is examined. N.J.S.A. 2C:43-2(b)(2) permits a court to place a person convicted of a crime on probation and to sentence him "to imprisonment for a term fixed by the court not exceeding 364 days to be served as a condition of probation." If N.J.S.A. 2C:44-1(f)(1) were interpreted to mandate a state prison sentence whenever the sentencing judge finds a need for imprisonment, the limited custodial term plus probation which the Legislature authorized in N.J.S.A. 2C:43-2(b)(2) *609 could never be imposed. N.J.S.A. 2C:44-1(f)(1) must be read in its contextual setting and in pari materia with the rest of the Code, see Loboda v. Clark Tp., 40 N.J. 424, 435 (1963), and should never be interpreted so as to render another part of the Code meaningless. See Abbotts Dairies v. Armstrong, 14 N.J. 319, 327-328 (1954).
The term "imprisonment" as used in N.J.S.A. 2C:44-1(d) means any imprisonment. In authorizing incarceration as a condition of probation, the Legislature defined it as "imprisonment". N.J.S.A. 2C:43-2(b)(2). The sentence imposed on defendant in this case contained a term of imprisonment. There is nothing to suggest that the Legislature in using the same word in different sections of the Criminal Code meant it to have more than one meaning.
Reversed and remanded for resentencing. We do not retain jurisdiction.