815 A.2d 1020 (2003)
357 N.J. Super. 500
STATE of New Jersey, Plaintiff-Appellant,
v.
Nicholas LEBRA, III, Defendant-Respondent.
State of New Jersey, Plaintiff-Appellant/ Cross-Respondent/Cross-Appellant,
v.
Ronnie Comeaux, Defendant-Respondent/ Cross-Appellant/Cross-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted January 15, 2003.
Decided February 20, 2003.
*1022 John E. Bergh, Salem County Prosecutor, attorney for appellant in A-2454-01T3 (Matthew P. Donelson, Assistant Prosecutor, on the brief).
Sufrin Zucker Steinberg & Wixted, attorneys for respondent Nicholas Lebra, III (Saul J. Steinberg, on the brief).
John E. Bergh, Salem County Prosecutor, attorney for appellant/cross-respondent/cross-appellant in A-2943-01T3 (Matthew P. Donelson, Assistant Prosecutor, on the brief).
Peter A. Garcia, Acting Public Defender, attorney for respondent/cross-appellant/cross-respondent Ronnie Comeaux (Susan Brody, Assistant Deputy Public Defender, of counsel and on the brief).
*1023 Before Judges KING, WEFING and WECKER.
*1021 The opinion of the court was delivered by WEFING, J.A.D.
These two appeals are from sentences imposed by the same trial judge for the same offense, vehicular homicide. In State v. Lebra, A-2454-01, defendant was sentenced to three years on probation, conditioned on serving 364 days in county jail, and the State appeals. In State v. Comeaux, A-2943-01, defendant was sentenced to four years in prison with an 85% period of parole ineligibility, and both parties appeal. The two matters were initially argued before us on our excessive sentence calendar; we ordered them transferred to our regular calendar for briefing of the issues presented. We now consolidate them for purposes of this opinion. After reviewing the records in each matter and considering the arguments, we remand both matters for resentencing.

I.
On October 23, 1999, shortly before 11:00 p.m., Lebra, then eighteen years old, was driving on Auburn Road in Pilesgrove Township. He had three passengers in his car. His speed exceeded one hundred miles per hour. He lost control of the vehicle, hit another car and then crashed into a telephone pole. One of his passengers, his friend, seventeen-year-old Brett Kooman, died in the crash. Lebra admitted he had been drinking that evening. A blood alcohol test performed several hours later showed a blood alcohol level of .079.
Lebra was thereafter indicted for aggravated manslaughter, a crime of the first degree, N.J.S.A. 2C:11-4a; vehicular homicide, a crime of the second degree, N.J.S.A. 2C:11-5, and assault by auto, a crime of the fourth degree, N.J.S.A. 2C:12-1c. He also received a number of motor vehicle summonses for various offenses, including driving while intoxicated, reckless driving, and speeding. As part of the preparation of its case, the State served an expert's report which, extrapolating from defendant's .079 blood alcohol reading, concluded that at the time of the accident, defendant's blood alcohol level was. 11, above the legal limit.
Lebra had no prior involvement with the criminal justice system, either as a juvenile or an adult. Ultimately he pled guilty to vehicular homicide. The terms of the plea agreement called for the State to recommend to the trial court that defendant be sentenced as if he had committed a crime of the third degree, rather than one of the second degree. When Lebra entered his plea, he specifically acknowledged that he understood "that in all likelihood, there [would] be a period of incarceration depending upon the arguments at the time of sentencing ... there [would] be a New Jersey State Prison sentence" as a result of his plea. He also acknowledged that his sentence would be subject to the No Early Release Act, N.J.S.A. 2C:43-7.2 ("NERA").
When Lebra appeared for sentence, however, the trial court did not impose a period of incarceration in State prison with an 85% period of parole ineligibility. Rather, after reviewing the presentence report and hearing the argument of counsel, the trial court sentenced defendant to three years on probation, conditioned upon serving 364 days in the county jail. It is from that sentence that the State has appealed. N.J.S.A. 2C:44-1f(2). Defendant's sentence has been stayed pending this appeal.

II.
On January 29, 2000, twenty-two-year-old Ronnie Comeaux attended a family *1024 reunion in Quinton Township. As he drove home, he was involved in a front-end collision sometime after 7:00 p.m. with another car. He had attempted to pass a car on a curve at a high rate of speed. He lost control of his vehicle and collided with an oncoming car. His passenger, Abu Gibson, died in the accident and the occupants of the other car were seriously injured. Comeaux told police who responded to the accident scene that he had been drinking beer at the reunion. A blood alcohol test showed a blood alcohol level of .165 at the time of the accident.
Comeaux was indicted for aggravated manslaughter, vehicular homicide, and three counts of fourth-degree aggravated assault. He also received motor vehicle summonses for driving while intoxicated, improper passing and reckless driving.
Comeaux had a minimal involvement with the criminal justice system. As a juvenile, he had been charged with improper behavior and defiant trespassing but that had been diverted and there was no adjudication. As an adult, he had been charged with possession of cocaine but that was downgraded and remanded to the municipal court. As with Lebra, these were Comeaux's first indictable charges. Comeaux pled guilty to vehicular homicide and one count of aggravated assault in return for the State's agreement to recommend a sentence of five years in prison for vehicular homicide and a concurrent nine months for aggravated assault. He further acknowledged that he was to be sentenced in accordance with NERA. The plea bargain did not call for the State to recommend that Comeaux be sentenced as a third-degree offender.
Comeaux was originally scheduled to be sentenced on the same day as Lebra. The trial court, however, did not impose sentence that day but rather, based upon the Lebra matter, rejected the plea bargain and invited the State to make another offer. The State declined to do so. Thereafter, the trial court indicated on the record to Comeaux that in return for a plea of guilty, the trial court would sentence him to four years in prison, subject to NERA. Defendant agreed. At sentencing, the trial court sentenced defendant accordingly. Defendant Comeaux has appealed, arguing that his sentence is so disparate from Lebra's that it must be adjusted accordingly. State v. Roach, 146 N.J. 208, 680 A.2d 634, cert. denied, Roach v. New Jersey, 519 U.S. 1021, 117 S.Ct. 540, 136 L.Ed.2d 424 (1996). The State has cross-appealed, arguing that the trial court's actions were improper.

III.
We turn first to the Lebra appeal. After reviewing the record, we are satisfied that the trial court's action in sentencing Lebra to a probationary term, conditioned upon serving 364 days in the county jail, was illegal, that the sentence must be vacated and the matter remanded for resentencing.
Defendant pled guilty to a second-degree crime and the presumption of imprisonment which attaches to a seconddegree crime remains, even if defendant has pled guilty pursuant to a plea agreement which calls for defendant to be sentenced as a third-degree offender. State v. Partusch, 214 N.J.Super. 473, 476, 519 A.2d 946 (App.Div.1987); State v. Rodriguez, 179 N.J.Super. 129, 134-35, 430 A.2d 957 (App.Div.1981). It is settled, moreover, that such presumption of imprisonment is not satisfied by a term of imprisonment imposed as a condition of probation under N.J.S.A. 2C:43-2b(2). State v. O'Connor, 105 N.J. 399, 402, 522 A.2d 423 (1987). The Supreme Court has clearly stated that "such a sentence is invalid." Ibid.
*1025 In certain rare instances, a trial court may find that imprisoning a person for a second-degree crime would be a "serious injustice," thus overcoming the presumption of imprisonment. N.J.S.A. 2C:44-1d. As we have noted, "[t]he standard for the requisite finding of `serious injustice' is extremely narrow," State v. Cooke, 345 N.J.Super. 480, 487, 785 A.2d 934 (App.Div.2001), certif. denied, 171 N.J. 340, 793 A.2d 718 (2002), and is met only in "truly extraordinary and unanticipated" circumstances. State v. Jarbath, 114 N.J. 394, 406, 555 A.2d 559 (1989), (quoting State v. Roth, 95 N.J. 334, 358, 471 A.2d 370 (1984)). That the mitigating factors may substantially outweigh the aggravating factors does not obviate the presumption of imprisonment. Cooke, supra, 345 N.J.Super. at 487, 785 A.2d 934. The Supreme Court has stated that only "[r]arely will general deterrence not be furthered by imprisonment for serious crimes.... To forestall the deterrent effect of incarceration, the defendant must be idiosyncratic." State v. Jabbour, 118 N.J. 1, 7, 570 A.2d 391 (1990) (citations omitted).
Jarbath, supra, is an excellent illustration of an "idiosyncratic" defendant for whom incarceration would be a serious injustice, such that imprisonment is not required. Defendant in that case was a twenty-one year old woman who was mentally retarded and had been diagnosed as psychotic. 114 N.J. at 398, 555 A.2d 559. Her nineteen-day-old son died after she twice dropped him on a coffee table. Ibid. Charged with murder, she pled guilty to second-degree manslaughter and was sentenced to an indeterminate term not to exceed seven years. Ibid. On appeal, this court reversed her sentence and sentenced her as a third-degree offender to five years on probation, with certain specified conditions. Id. at 399, 555 A.2d 559. After granting the State's petition for certification, the Supreme Court affirmed. Ibid.
The Court noted the sentencing philosophy of the Code and its goal of establishing uniformity in sentencing by "structuring and standardizing the sentencing courts' discretion." Id. at 400, 555 A.2d 559. The Court analyzed in detail the aggravating and mitigating factors that had been found by the trial court and agreed with this court's conclusion that those factors were not supported by the record. Id. at 406, 555 A.2d 559. Turning to this court's determination that a probationary sentence was appropriate, the Court noted that considering whether there is a serious injustice, such that a term of imprisonment is not required, "necessarily directs attention to the character of the defendant." Id. at 407, 555 A.2d 559. The shift in focus from the offense to the character and condition of the defendant is "to avoid the imposition of a sentence that goes beyond the central Code purpose of imposing proportionate sentences, that is, sentences that fit the particular crime." Id. at 408, 555 A.2d 559. The Court agreed that defendant's inability to understand that her actions deserved a prison term, as well as the overwhelming impact upon her of incarceration, beyond what the usual inmate might experience, warranted a finding that imprisoning defendant would work a serious injustice.
In Jabbour, on the other hand, the Court set aside a probationary sentence for defendant who had pled guilty to second-degree sexual assault upon a four-year-old girl. Jabbour, supra, 118 N.J. at 3, 570 A.2d 391. The trial court had characterized defendant "as a sad, sorry, weak individual in need of psychiatric attention... [for whom] [a] period of incarceration will carry a high risk of his never overcoming his emotional difficulties...." Id. at 4, 570 A.2d 391. Defendant's emotional problems, however, did not make him idiosyncratic *1026 so as to justify dispensing with a period of incarceration. The Court stated, "[d]efendants who commit serious crimes should expect to spend time in prison." Id. at 8, 570 A.2d 391.
The Court recently reiterated its views in this regard, noting that the judicial power to find a serious injustice and, thus, override the presumption of imprisonment "is exercisable only in extraordinary circumstances, when `the human cost of said deterrence ... is too great.' " State v. Soricelli, 156 N.J. 525, 530, 722 A.2d 95 (1999) (quoting State v. Roth, supra, 95 N.J. at 358, 471 A.2d 370). A defendant cannot be characterized as idiosyncratic for purposes of N.J.S.A. 2C:44-1d merely because of his employment. State v. Corso, 355 N.J.Super. 518, 528-29, 810 A.2d 1130 (App.Div.2002) (holding that defendant's status as a police officer, for whom incarceration could pose "peculiar hardships," insufficient basis to overcome the presumption of imprisonment).
The sentencing transcript for defendant Lebra can in no way support a finding that defendant Lebra is the idiosyncratic defendant for whom imprisonment would be a serious injustice. Indeed, the sentencing court made no such finding. In reviewing the statutory aggravating and mitigating factors, the sentencing court found only one aggravating factor, the need for deterrence. N.J.S.A. 2C:44-1a(9). That was in accord with the State's argument at sentencing; the prosecutor agreed that to be the only aggravating factor present. In contrast, the sentencing court found five mitigating factors: no history of prior criminal activity, N.J.S.A. 2C:44-1b(7); defendant's conduct was the result of circumstances unlikely to recur, N.J.S.A. 2C:44-1b(8); defendant was unlikely to commit another offense, N.J.S.A. 2C:44-1b(9); defendant was likely to respond affirmatively to probationary treatment, N.J.S.A. 2C:44-1b(10); and imprisonment would involve excessive hardship for defendant, N.J.S.A. 2C:44-1b(11).
The court then noted that although it was "a difficult finding to make," the mitigating factors outweighed the aggravating factors. It continued in the following manner:
[T]he law in this case provides that there should be a presumption of imprisonment unless having regard to the character and condition of the defendant, it is of the opinion that imprisonment would be a serious injustice which would override the need to deter.
After careful consideration of this, I find that there is a need to deter, there is a need for, there is a need for incarceration. And normally, the fine line distinction between imprisonment, which imprisonment refers to a New Jersey State Prison sentence, and incarceration refers to a lesser incarceration....
I find that the need to deter is present, but I find that the presumption of imprisonment does not apply because of the fact that the mitigating factors so highly outweigh the aggravating factors....
[T]here are lots of other young men who are out there, and young women as well, who need to be deterred. And I would hope that this sentence would have the dual effect of deterring others, which I'm obliged to do pursuant to the formula given to me. But at the same time, would give due consideration to the mitigating factors that are clearly present in this case.
The presumption of imprisonment, however, is not overcome because the mitigating factors predominate, Jabbour, supra, 118 N.J. at 7, 570 A.2d 391, and the requirement of incarceration is not satisfied by a period of county jail time. *1027 O'Connor, supra, 105 N.J. at 409, 522 A.2d 423. Although the sentencing court used the phrase "serious injustice," it never explained what it was about the character and condition of the defendant that would make his imprisonment a serious injustice. The trial court never determined that the mitigating factors amounted to "truly exceptional" circumstances or rendered defendant's character and condition "idiosyncratic" or determined that imprisonment would result in a "serious injustice which overrides the need to deter such conduct by others." Cooke, supra, 345 N.J.Super. at 487, 785 A.2d 934. Mere invocation of the serious injustice exception will not suffice without a detailed explanation of its application to the facts and circumstances at hand and a reasoned demonstration that this is one of those rare cases in which the otherwise paramount goals of deterrence have been overridden.
We noted earlier that the trial court found as a mitigating factor that imprisonment would pose an excessive hardship to defendant. This finding was based upon the fact that defendant, between the occurrence of the fatal accident and sentencing, was diagnosed with a brain tumor. The record presented to us, however, contains nothing beyond the fact of the diagnosis. There is no indication of what treatment, if any, was prescribed and what prognosis had been made. Nor is there any indication that defendant's medical needs could not be adequately met while incarcerated. The trial court clearly did not rely upon defendant's health as a basis to withhold a sentence to state prison. Compare State v. E.R., 273 N.J.Super. 262, 641 A.2d 1072 (App.Div.1994) (holding that the "serious injustice" exception applied because defendant was dying from the AIDS virus).
We have concluded that defendant Lebra must be resentenced and we remand this matter for that purpose.

IV.
We turn now to the Comeaux matter. We are compelled to comment upon a fundamental misapprehension under which the participants appeared to operate both below and on appeal. Defendant Comeaux was, as noted earlier, originally scheduled to be sentenced the same day as defendant Lebra. Lebra's matter was heard first. Comeaux's attorney, having heard the sentence Lebra received, sought to obtain a similar result for his client. He did not, however, argue for a downward departure from the sentencing parameters of the plea bargain. Rather, he argued the trial court should "reject" the plea bargain because of the seeming difference in sentence outcomes. The prosecutor argued that differences in the two cases justified the different results. The trial court finally stated "after hearing arguments of Counsel, it is my intention and I will reject this plea agreement at this time and ask that the State reconsider its plea offer to the defendant."
The trial court, however, was not required to "reject" the plea bargain in order to impose a sentence lower than was bargained for. It is only in the case of a so-called contract plea under N.J.S.A. 2C:35-12 that a trial court cannot impose a lesser sentence than the parties bargained for, but must instead reject the bargain. State v. Bridges, 131 N.J. 402, 621 A.2d 1 (1993). The court noted in State v. Leslie, 269 N.J.Super. 78, 84, 634 A.2d 572 (App. Div.1993), certif. denied, 136 N.J. 29, 641 A.2d 1040 (1994), that "Section 12 expressly limits the sentencing court's ability to sentence a defendant to a lesser sentence than that `provided under the terms of the plea agreement.' If the trial court had any misgivings about the validity or the fairness of the plea agreement and the sentence to be imposed thereunder, it *1028 should have rejected the plea and directed defendant to stand trial." In other criminal matters, the "parties can agree only on a sentence that the prosecutor will `recommend' to the court; they are not empowered to negotiate a sentence that can have any binding effect." State v. Warren, 115 N.J. 433, 442, 558 A.2d 1312 (1989). And a plea bargain under which defendant agrees his attorney will not argue in favor of a lesser term at sentencing than that set forth in the plea bargain is invalid and unenforceable. State v. Briggs, 349 N.J.Super. 496, 793 A.2d 882 (App.Div.2002).
Other than the one exception we have noted, it is only when a trial court concludes that it should impose a greater sentence than was encompassed in the plea bargain that the trial court is called upon to "reject" a plea bargain. That was not the situation presented here, however.
We turn now to defendant's appeal from the sentence the trial court finally imposedfour years in prison, with an 85% period of parole ineligibility. Defendant's appeal is based upon the facial disparity of that sentence with the sentence imposed upon Lebra. That argument is, however, moot in light of our determination that Lebra must be resentenced.
The State, however, has also appealed, arguing that the trial court improperly injected itself into the plea bargaining process and that the sentence did not comport with the statutory sentencing guidelines. While we agree that the trial court's actions did not comport with the requirements of R. 3:9-3(c), we decline to set aside the sentence on that basis; we consider it more productive to focus on the substance of the sentence itself.
N.J.S.A. 2C:44-1f(2) provides that a court may, if "clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands," sentence one convicted of a first or second-degree crime "to a term appropriate to a crime of one degree lower than that of the crime for which he was convicted." There are, thus, two prongs which must be satisfied before a court may sentence an offender to a lower range: the court must be clearly convinced that the mitigating factors substantially outweigh the aggravating factors and the interest of justice must demand the lower sentence range.
Here, the trial court found aggravating factor nine, the need for deterrence, N.J.S.A. 2C:44-1a(9). It also noted the slight nature of defendant's criminal background and determined that aggravating factor six was entitled to only the "slightest weight." N.J.S.A. 2C:44-1a(6). It then found four mitigating factors: no prior criminal record (N.J.S.A. 2C:44-1b(7)); his conduct was the result of circumstances unlikely to recur (N.J.S.A. 2C:44-1b(8)); his character and attitude indicate he was unlikely to commit another offense (N.J.S.A. 2C:44-1b(9)); and imprisonment would pose an excessive hardship to defendant or his dependents (N.J.S.A. 2C:44-1b(11)).
Based on that, the trial court concluded that the mitigating factors substantially outweighed the aggravating factors and that it would sentence defendant as a third-degree offender. That, however, is an insufficient basis to downgrade an offense for sentencing purposes. After imposing sentence, defense counsel inquired if the court were:
finding that it's clearly convinced that the mitigating factors substantially outweigh the aggravating factors and that the interest of justice demands that he be sentenced ... in the third degree range? *1029 The trial court responded that it was making those findings but it did not supplement its sentencing analysis in any regard. The analysis, however, was clearly insufficient. It is not enough to say that the "interest of justice" demanded that defendant be sentenced within a third-degree range; the trial court was obligated to explain how it reached that conclusion. Further, we are unable to determine from the record supplied to us how the trial court determined that mitigating factor eleven applied. There is no indication in the pretrial report that defendant has any dependents at all; indeed, it clearly states he has none. Defendant's attorney mentioned that defendant was injured in the accident as well and, according to the pretrial report, he has "pins and plates in his neck and arm, and a rod in his thigh." There is no evidence in the record before us, however, that imprisonment would pose a risk to defendant's health.
We recognize that at the conclusion of defendant's sentencing, when the prosecutor indicated his intent to appeal, he also indicated that in no event would he seek a sentence of more than five years, subject to NERA, while the trial court sentenced defendant to four years, subject to NERA. We cannot conclude that a disparity of only one year justifies disregarding the deficiencies in defendant's sentencing proceedings. We are satisfied that Comeaux, as Lebra, must be resentenced. We express no view on whether the record could be supplemented in a manner that would support sentencing defendant Comeaux as a third-degree offender.
In State v. Lebra, A-2454-01, the matter is remanded for resentencing in accordance with this opinion and the Code's statutory guidelines. In State v. Comeaux, A-2943-01, we also remand for resentencing in accordance with this opinion and the Code's statutory guidelines; defendant's cross-appeal is dismissed as moot.